PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS          NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

AIDAN SYNNOTT

TELEPHONE    (212) 373-3213
FACSIMILE    (212) 492-0213

E-MAIL:  asynnott@paulweiss.com

September 28, 2020

**By ECF**

The Honorable Lorna G. Schofield
United States District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007

Re:   *UMB Bank, N.A.* v. *Revlon, Inc. et al.*, 20 Civ. 6352 (LGS)

Dear Judge Schofield:

Defendants Revlon, Inc. and Revlon Consumer Products Corporation (together, "Revlon" or the "Company") respectfully submit this pre-motion letter pursuant to the Court's Individual Rules regarding their motion to dismiss all claims asserted by UMB Bank, N.A. ("UMB") for lack of standing, as well as their request for a stay of this action pending service and pending determination of related cases consolidated as *In re Citibank August 11, 2020 Wire Transfers*, No. 20 Civ. 6539 (S.D.N.Y.) (JMF) (the "Citi Action").

### I.   Background

Seven months ago, Revlon began negotiating with a group of existing lenders under a Term Loan Agreement, dated September 7, 2016 (the "Agreement"), to provide much-needed financing. As market conditions deteriorated in the pandemic, several saw an opportunity to use the situation for their own gain, backed out of negotiations, and formed a group to oppose Revlon's efforts ("Non-Participating Lenders" or "NPLs").

In contrast, the remaining group members (together with additional lenders) and Citibank ("Citi"), the Agent under the Agreement, continued to work with Revlon to structure a financing that was fair to the Company, its approximately 7,000 employees, and its customers and vendors. NPLs were invited to participate, but declined. And during the six months since negotiations began, they chose not to ask this or any other court to enjoin the transaction. The complaint before this Court is a matter of sour grapes. Having failed to block the financing, NPLs seek to replace Citi with a more pliable agent (even though they have no authority under the Agreement to do so) and punish Revlon for securing financing without them.

But Section 9.9 of the Agreement requires that any successor agent (1) be appointed "*from among the Lenders*" to Revlon under the Agreement and (2) be "subject to approval by" Revlon. UMB is not a Lender and thus does not qualify under the plain terms of the Agreement. Revlon negotiated with UMB in good faith based on the

The Honorable Lorna G. Schofield                                                                                                 2

premise that it would eventually become a Lender.  As of this date, however, UMB has not done so, Revlon has not consented to UMB's succession, and no agency transition agreement or documents necessary for the enforcement of security interests by UMB as collateral agent have been executed.  Accordingly, Citi remains the Agent.

On August 11, 2020, Revlon transferred roughly $8 million to Citi, as Agent, to make an interest payment under the Agreement.  But Citi mistakenly transferred to lenders (including NPLs) not only that $8 million, but also roughly $900 million of its own funds.  Certain opportunistic NPLs treated the mistaken payment as a full repayment of all outstanding principal and interest under the Agreement, despite knowing that the Agreement does not mature until 2023.  Citi sued these lenders to recover the mistaken payments, and trial before Judge Furman in that action is set for November 9, 2020.

On August 12, UMB, purporting to act as Agent under the Agreement, served a notice of acceleration on Revlon, asking it to pay the same debt NPLs have told Judge Furman they believe was paid by Citi the day before.  Also on August 12, UMB filed this action against Revlon and others.  As in its purported notice, UMB alleges that Revlon's activities, some from roughly a year ago with no objection then by NPLs, breached obligations under the Agreement.  But only the Agent is contractually authorized to enforce the Agreement in a legal action.  As UMB is not the Agent, nor even a party to the Agreement, it lacks standing to bring these claims and they should be dismissed.

**II.      Grounds for Dismissal**

<u>Failure to Serve Defendants</u>.  Curiously, UMB has not served either the complaint or the Court's September 1, 2020 order upon Revlon, nor, to Revlon's knowledge, any other defendant.  If not remedied, this would create grounds for dismissal under Rule 12(b)(5).  At a minimum, Revlon respectfully suggests that this matter should not proceed, and the October 15 status conference and deadline for the parties' joint letter and proposed scheduling order should be adjourned, until UMB serves *all* defendants (including several John Doe defendants who will be prejudiced if they do not have an opportunity to join scheduling and other discussions).

<u>UMB Lacks Standing to Bring Its Claims</u>.  UMB's complaint should also be dismissed for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).  To have standing, "the plaintiff [must have] 'alleged such a personal stake in the outcome of the controversy' as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf.'"  *Cortlandt St. Recovery Corp.* v. *Hellas Telecomm's, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Warth* v. *Seldin*, 422 U.S. 490, 498-99 (1975)).  UMB fails to do so.

UMB purports to have standing to enforce the Agreement as Agent, but UMB *is not the Agent*.  Citi retains this role until replaced by a permissible successor under Section 9.9 of the Agreement.  The purported appointment of UMB fails to comply with the procedure set forth therein and thus is void ab initio.  As UMB effectively concedes

in the complaint, it is not a "Lender."  Nor has Revlon consented to UMB's appointment as Agent.  In any event, no agency transition agreement has been executed.  Without a transition agreement (which provides for critical items like the handover of the lender register), there can be no agency transfer.

UMB, implicitly acknowledging that it is *not* the Agent and lacks standing on that basis, has tried to manufacture standing by assignment.  To begin, any purported assignment has no bearing on claims arising from the Agreement, which, under its terms, can only be brought by the Agent.  New York courts routinely enforce such no-action clauses.  *See, e.g.*, *Eaton Vance Mgmt.* v. *Wilmington Sav. Fund Soc., FSB*, No. 654397/2017, 2018 WL 1947405, at *12 (Sup. Ct., N.Y. Cty. Apr. 25, 2018).  Moreover, any assignment of rights under the Agreement would require Revlon's consent.

Nor does the alleged assignment give UMB standing to bring the other (i.e., tort and statutory) claims asserted in the complaint.  An assignee has standing where "the language [of the assignment] manifests [the owner's] intention to transfer at least title or ownership, i.e., to accomplish a completed transfer of the entire interest of the assignor in the particular subject of assignment."  *Advanced Magnetics, Inc.* v. *Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997).  But the assignment of claims merely for prosecution and collection, as UMB alleges occurred here, is insufficient to confer standing as a matter of law.  *Cortlandt St. Recovery Corp.* v. *Deutsche Bank AG*, No. 12 Civ. 9351(JPO), 2013 WL 3762882 (S.D.N.Y. 2013).

UMB's causes of action also fail on their merits but Revlon proposes that the Court "consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot."  *Rhulen Agency, Inc.* v. *Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

### III.     Request for Stay and Proposed Briefing Schedule

Once defendants are served, Revlon proposes to brief its motion on standing but otherwise requests a stay of this action, pending resolution of that motion and of the Citi Action.  In that case, certain NPLs—represented by the very same counsel as UMB here—take positions that inherently contradict UMB's instant assertions.  UMB claims here that it is the Agent, and that Revlon defrauded NPLs by transferring property when it was essentially insolvent.  But in the Citi Action, NPLs, recognizing *Citi* as Agent, claim they believed in good faith that the sums they received from Citi were intended to pay off the entire principal and interest under the Agreement.  These positions are inconsistent and any substantive litigation here will only engender further confusion.

Revlon proposes that the Court adopt the following briefing schedule once all defendants are properly served: (1) Revlon files its motion to dismiss on standing and supporting memorandum 14 days after the Court approves its request to do so; (2) UMB files its opposition brief, if any, 14 days thereafter; and (3) Revlon files its reply brief, if any, 7 days thereafter.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Lorna G. Schofield 4

                                                       Respectfully,

                                                       */s/* Aidan Synnott

                                                       Aidan Synnott

cc:     All Counsel (via ECF)